DAVID J. LUJAN
LUJAN & WOLFF LLP
Attorneys at Law
DNA Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone: (671) 477-8064/5
Facsimile: (671) 477-5297 (LAWS)

*Attorney for Plaintiff,*
*Jive Lee Kaai*

FILED
DISTRICT COURT OF GUAM
MAR 22 2017
JEANNE G. QUINATA
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF GUAM

| | |
|---|---|
| JIVE LEE KAAI,<br><br>    Plaintiff,<br><br>v.<br><br>ROMAN CATHOLIC ARCHBISHOP OF AGANA, a Corporation sole;<br>RAYMOND CEPEDA, an individual; DOE ENTITIES 1-5; and DOE-INDIVIDUALS 6-50, inclusive<br><br>    Defendants. | CIVIL ACTION NO: **17-00033**<br><br>**VERIFIED COMPLAINT FOR DAMAGES FOR**<br><br>1. **Child Sexual Abuse**<br>2. **Negligence**<br>3. **Negligent Supervision**<br>4. **Negligent Hiring and Retention**<br>5. **Breach of Fiduciary Duty / Confidential Relationship**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jive Lee Kaai ("Jive") files this Complaint for damages based on prior sexual abuse (the "Complaint") against Defendants Archbishop of Agana, a corporation sole, Raymond Cepeda, an individual, and DOES 1-50 ("Defendants").

I.
**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because all parties are citizens of diverse states and the amount in controversy exceeds $75,000.00 exclusive of interest, fees, and costs.

2. This Court has personal jurisdiction over this matter because Defendants purposefully availed themselves to the benefit of the laws of this judicial district by regularly transacting and / or conducting business in this state.

ORIGINAL

3. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and or a substantial part of property that is the subject of the action is situated.

## II.
## PARTIES

4. At all times relevant hereto, Jive has been and is an individual residing in Chalan Pago, Guam. Jive is currently 47-years-old and previously lived in Dededo, during his childhood years.

5. At all times relevant hereto, and upon information and belief, Roman Catholic Archbishop of Agana, a corporation sole, in accordance with the discipline and government of the Roman Catholic Church, is the legal name for Defendant Archbishop of Agana, also known as Archdiocese of Agana. ("Agana Archdiocese"), which is and has been at all times relevant hereto a non-profit corporation organized and existing under the laws of Guam, authorized to conduct business and conducting business in Guam, with its principal place of business in Guam. Agana Archdiocese is responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein.

6. At all times relevant hereto, Defendant Raymond Cepeda ("Cepeda"), an individual and an agent of the Agana Archdiocese, was a member of the clergy of the Agana Archdiocese, and a Catholic priest working for the Agana Archdiocese, who was removed as a priest in 2009 or 2010. At all times relevant hereto, Cepeda was a resident of Guam and is responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein.

7. Defendant-entities named herein as DOES 1 - 5, inclusive, are or at all times relevant hereto, were insurance companies that provided general liability coverage and / or excess level liability coverage pursuant to policies issued to the Agana Archdiocese and / or Roman Catholic Church of Guam. Defendant-individuals named here-in as DOES 6-50, inclusive, are at all times relevant hereto, were agents, employees, representatives and / or affiliated entities of the Agana Archdiocese and /or Roman Catholic Church outside of Guam whose true names and capacities are unknown to Jive who therefore sues such defendants by such fictitious names, and who will amend the Complaint to show the true names and capacities of each such Doe defendant when ascertained. DOES 6 -50 assisted, aided and abetted and / or conspired with Cepeda and / or other members of the Agana Archdiocese to conceal, disguise, cover up, and / or promote the wrongful acts

complained of herein. As such, each such Doe is legally responsible in some manner for the events, happenings, and / or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

8. Each defendant is the agent, servant and/or employee of other defendants, and each defendant was acting within the course and scope of his, her or its authority as an agent, servant and/or employee of the other defendants. Defendants, and each of them, are individuals, corporations, alter egos and partnerships of each other and other entities which engaged in, joined in and conspired with the other wrongdoers in carrying out the tortious and unlawful activities described in this Complaint; and defendants, each of them, ratified the acts of the other defendants as described in this Complaint.

### III.
### INTRODUCTORY ALLEGATIONS

9. Since the inception of the priesthood many centuries ago, becoming a Catholic priest has required numerous vows to be taken among them a vow of celibacy, obedience to the laws of both God and society, and a variety of responsibilities that elevated priests to a high status in the community which has induced parents to entrust their boys to the case of priests and likewise induced children to submit to the commands and will of priests.

10. The systematic and ongoing pattern of sexual abuse of young boys was characteristic of an internal society within defendant Agana Archdiocese and whose norms were based on pedophilic conduct disguised by the rituals and pageantry of liturgical services.

11. These sexually predatory norms were an integral part of the standards and culture generated by the central authority of the Roman Catholic Church based in Vatican City, Italy, which closely controlled the operations of the Agana Archdiocese, and which aided and abetted such sexually predatory and abusive practices by priests by knowingly tolerating such actions and engaging in actions to protect and shield priests through such policies as transfers to other jurisdictions and maintaining an internal code of silence.

12. In or about 1981 or 1982, around the ages of twelve (12) or thirteen (13) years old, Jive was a student at Santa Barbara Catholic School ("Santa Barbara"), a Catholic school under the supervision of the Sisters of Mercy, which is located about one-minute away from the Santa Barbara Catholic Church ("Dededo Parish") in Dededo, Guam.

3

13. Upon information and belief, during the time Jive attended Santa Barbara, Cepeda was a priest at the Dededo Parish and appeared to be in charge at Santa Barbara because the nuns always submitted to him. Students at Santa Barbara were taught to honor and respect not only the nuns but also the priests, and the students were told that they had to do whatever the nuns and priests told them to do.

14. One day, during that school year, Jive and several other students got into trouble at Santa Barbara and had to stay back after school for detention. Part of their punishment was to clean around the campus. While cleaning around the campus, Cepeda called for Jive and two other boys to assist Cepeda in delivering a few boxes of books. Jive and the two other boys loaded the boxes of books into Cepeda's car and then Cepeda drove them to St. William's Catholic Church ("Tumon Parish") in Tumon.

15. When they arrived at the Tumon Parish, Jive and the two other boys unloaded the boxes of books into a room located in the Tumon Parish. After unloading the last box, Cepeda told the two other boys to go wait outside and closed the door, leaving Cepeda and Jive alone in the room. Cepeda grabbed Jive, unzipped Jive's pants, removed it and began to sexually molest and abuse Jive. As Cepeda proceeded to masturbate Jive, Cepeda told Jive to "relax, it's okay, don't worry, don't you like it!" Despite Jive's efforts to make Cepeda stop, Cepeda continued to grope at Jive's private parts. Cepeda then took Jive's hand and tried to force Jive to touch Cepeda's penis, but Jive refused and kept moving his hand away. When Cepeda was done, he told Jive not to tell anyone.

16. Jive never understood why Cepeda sexually molested and abused him, and since the abuse, Jive avoided going to church unless he had to.

17. At all times relevant hereto, Cepeda sexually abused and molested Jive when Jive was a minor and committed such acts while serving as a priest in the Dededo Parish, in both of his capacities as an agent and employee of the Agana Archdiocese, which is vicariously liable for his actions.

18. The Agana Archdiocese and DOES 1-50, inclusive, knew that Cepeda had sexually abused and molested Jive and other minor children for years, and rather than reporting the matter to law enforcement and without intervening so as to prevent Cepeda from engaging in additional instances of sexual abuse, and without seeking to have Cepeda acknowledge and take responsibility for his wrongful actions, for years they assisted Cepeda with the specific purpose or design to keep Cepeda's misconduct hidden and secret; to

hinder or prevent Cepeda's apprehension and prosecution; and to protect the Agana Archdiocese, as well as the Roman Catholic church as an international institution.

19. To this day, the Agana Archdiocese and DOES 1-50 never contacted Jive, Jive's family, or children they know Cepeda had sexual contact with. The Agana Archdiocese and DOES 1-50 have been content that any other children that were sexually abused by Cepeda while he was serving as a priest, will remain affected by guilt, shame and emotional distress.

20. The criminal offense of Child Abuse is defined in 9 GCA § 31.30, which states in pertinent part as follows:

> (a) A person is guilty of child abuse when:
>    (1) he subjects a child to cruel mistreatment; or
>    (2) having a child in his care or custody or under his control, he:
>       * * *
>       (B) subjects that child to cruel mistreatment; or
>       (C) unreasonably causes or permits the physical or, emotional health of that child to be endangered

21. Under 19 GCA § 13101, the following relevant definitions are provided:

> * * *
> (b) Abused or neglected child means a child whose physical or mental health or welfare is harmed or threatened with harm by the acts or omissions of the person(s) responsible for the child's welfare;
> * * *
> (d) Child means a person under the age of 18 years;
> * * *
> (t) Harm to a child's physical health or welfare occurs in a case where there exists evidence of injury, including but not limited to:
> * * *
> (2) Any case where the child has been the victim of a sexual offense as defined in the Criminal and Correctional Code; or
> (3) Any case where there exists injury to the psychological capacity of a child such as failure to thrive, extreme mental distress, or gross emotional or verbal degradation as is evidenced by an observable and substantial impairment in the child's ability to function within a normal range of performance with due regard to the child's culture

22. Under 9 GCA § 25A201, "sexual conduct" with a minor is defined as follows:

> (o) Sexual Conduct means acts of sexual penetration, sexual contact, masturbation, bestiality, sexual penetration, deviate sexual intercourse, sadomasochistic abuse, or lascivious exhibition of the genital or pubic area of a minor.

5

23. Under 9 GCA § 25.10(8), "sexual contact" is defined as follows:

> (8) Sexual Contact includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.

24. Under 9 GCA § 25.20, the crime of Second Degree Criminal Sexual Misconduct with regard to a child is set forth in pertinent part as follows:

> (a) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
> (1) that other person is under fourteen (14) years of age;
> (2) that other person is at least fourteen (14) but less than sixteen (16) years of age and the actor is a member of the same household as the victim, or is related by blood or affinity to the fourth degree to the victim, or is in a position of authority over the victim and the actor used this authority to coerce the victim to submit.

25. Under 19 GCA § 13201(b), the following are required to report child abuse:

> (a) Persons required to report suspected child abuse under Subsection (a) include, but are not limited to, ... clergy member of any religious faith, or other similar functionary or employee of any church, place of worship, or other religious organization whose primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, ...

## IV.
## FIRST CAUSE OF ACTION

**Child Sexual Abuse**
**[Against Defendant Cepeda]**

26. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 25 of this Complaint as if fully set forth herein.

27. Cepeda committed the offense of Second Degree Criminal Sexual Misconduct, as set forth in 9 GCA § 25.20, by engaging in sexual contact with Jive when Jive was under fourteen (14) years of age.

28. Cepeda also committed the offense of Child Abuse, as set forth in 9 GCA § 31.30 by subjecting Jive to cruel mistreatment, including but not limited to having Jive, who was a child at the time pursuant to 19 GCA § 13101(d), under his care, custody or control, unreasonably caused or permitted the physical or emotional health of the child to be endangered.

29. As a direct and proximate consequence of Cepeda's misconduct, Jive was an abused or neglected child within the meaning of 19 GCA § 13101(b) because his physical or mental health or welfare was and continues to be harmed by the acts or omissions of Cepeda, who was responsible for the child's welfare. Moreover, as Cepeda's misconduct constitutes the commission of one or more criminal offenses, Jive has suffered harm to a child's physical health or welfare within the meaning of 19 GCA § 13101(t)(2) because Jive was the victim of a sexual offense as defined in the Criminal and Correctional Code (9 GCA).

30. As a direct and proximate consequence of Cepeda's misconduct, Jive has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

31. By engaging in the conduct described herein, Cepeda acted with malice, oppression, and/or fraud, entitling Jive to exemplary and punitive damages.

## V.
## SECOND CAUSE OF ACTION

### Child Sexual Abuse
### [Against Defendants Agana Archdiocese and DOES 1 – 50]

32. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33. Defendants Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) are vicariously liable for the sexual abuse committed upon Jive by Cepeda. Public policy dictates that Defendants should be held responsible for Cepeda's wrongful conduct under the theory commonly referred to as *Respondeat Superior*.

34. For the reasons set forth in the incorporated paragraphs of this Complaint, the sexual abuse of Jive arose from and was incidental to Cepeda's employment with the Agana Archdiocese, and while Cepeda, was acting within the scope of his employment with the Agana Archdiocese at the time he committed the acts of sexual abuse, which were foreseeable to Defendants.

35. Defendants either had actual knowledge of Cepeda's sexual abuse of Jive, or could have and should have reasonably foreseen that Cepeda would commit sexual abuse to Jive in the course of his

7

employment as a priest of the Agana Archdiocese. Seminarians and priests witnessed and heard of Cepeda sexually abusing boys. As a result of Jive's abuse and other boys, Cepeda was defrocked in 2009 or 2010.

36. As a direct and proximate result of the Defendants' above – described conduct, Jive has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

37. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Jive to exemplary and punitive damages.

## VI.
## THIRD CAUSE OF ACTION

**Negligence**
**[Against All Defendants]**

38. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39. Defendants Cepeda, Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) had a duty to protect Jive when he was entrusted to Cepeda's care as an employee of the Agana Archdiocese. Jive's care, welfare, and / or physical custody were temporarily entrusted to Defendants, and Defendants accepted the entrusted care of Jive. As such, Defendants owed Jive, as a child at the time, a special duty of care, in addition to a duty of ordinary care, and owed Jive the higher duty of care that adults dealing with children owe to protect them from harm.

40. By virtue of his unique authority and position as a Roman Catholic priest, Cepeda was able to identify vulnerable victims and their families upon which he could perform such sexual abuse; to manipulate his authority to procure compliance with his sexual demands from his victims; to induce the victims to continue to allow the abuse; and to coerce them not to report it to any other persons or authorities. As a priest, Cepeda had unique access to a position of authority within Roman Catholic families like the family of Jive. Such access, authority and reverence was known to the Defendants and encouraged by them.

41. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Cepeda's sexually abusive and exploitative propensities and / or that Cepeda was an unfit

8

agent. It was foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to children in their care, including but not limited to Jive, the children entrusted to Defendants' care would be vulnerable to sexual abuse by Cepeda.

42. Defendants breached their duty of care to Jive by allowing Cepeda to come into contact with Jive as a child without supervision; by failing to adequately supervise, or negligently retaining Cepeda whom they permitted and enabled to have access to Jive; by failing to properly investigate; by failing to inform or concealing from Jive's parents, guardians, or law enforcement officials that Cepeda was or may have been sexually abusing minors; by holding out Cepeda to Jive's parents or guardians, and to the community of Guam at large, as being in good standing and trustworthy as a person of stature and integrity. Defendants cloaked within the facade of normalcy Cepeda's contact with Jive and / or with other minors who were victims of Cepeda, and deliberately concealed and disguised the sexual abuse committed by Cepeda.

43. As a direct and proximate result of the Defendants' above – described conduct, Jive has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

44. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Jive to exemplary and punitive damages.

## VII.
## FOURTH CAUSE OF ACTION

**Negligent Supervision**
**[Against Defendants Agana Archdiocese and DOES 1 – 50]**

45. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46. Defendants Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) had a duty to provide reasonable supervision of both Cepeda and minor child Jive; to use reasonable care in investigating Cepeda; and to provide adequate warning to Jive's family, and to families of other children who were entrusted to Cepeda, of Cepeda's sexually abusive and exploitative propensities and unfitness.

9

47. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Cepeda's sexually abusive and exploitative propensities and/or that Cepeda was an unfit agent. Despite such knowledge, Defendants negligently failed to supervise Cepeda in his position of trust and authority as a parish priest, where he was able to commit the wrongful acts against Jive alleged herein. Defendants failed to provide reasonable supervision of Cepeda, failed to use reasonable care in investigating Cepeda, and failed to provide adequate warning to Jive's family regarding Cepeda's sexually abusive and exploitative propensities and unfitness. Defendants further failed to take reasonable measures to prevent future sexual abuse.

48. As a direct and proximate result of the Defendants' above – described conduct, Jive has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

49. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Jive to exemplary and punitive damages.

## VIII.
## FIFTH CAUSE OF ACTION

**Negligent Hiring And Retention**
**[Against Defendants Agana Archdiocese and DOES 1 - 50]**

50. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51. Defendants Agana Archdiocese and DOES 1 - 50 (collectively "Defendants" as alleged in this cause of action) had a duty not to hire and / or retain Cepeda in light of his sexually abusive and exploitative propensities.

52. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Cepeda's sexually abusive and exploitative propensities and / or that Cepeda was an unfit agent. Despite such knowledge and / or an opportunity to learn of Cepeda's misconduct, Defendants negligently hired and retained Cepeda in his position of trust and authority as a parish priest, where he was able to commit the wrongful acts against Jive alleged herein. Defendants failed to properly evaluate

10

Case 1:17-cv-00033   Document 1   Filed 03/22/17   Page 10 of 14

Cepeda's application for employment by failing to conduct necessary screening; failed to properly evaluate Cepeda's conduct and performance as an employee of Defendants; and failed to exercise the due diligence incumbent upon employers to investigate employee misconduct, or to take appropriate disciplinary action, including immediate termination and reporting and referral of Cepeda's sexual abuse to appropriate authorities. Defendants negligently continued to retain Cepeda in service as a Catholic priest, working for Defendants, which enabled him to continue engaging in the sexually abusive and predatory behavior described herein until Cepeda's discharge in 2009 or 2010.

53. As a direct and proximate result of the Defendants' above – described conduct, Jive has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

54. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Jive to exemplary and punitive damages.

## IX.
## SIXTH CAUSE OF ACTION

### Breach of Fiduciary Duty And / Or Confidential Relationship
### [Against All Defendants]

55. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56. By holding Cepeda out as a qualified priest and a person of stature and integrity within the Catholic Archdiocese, Defendants Agana Archdiocese and DOES 1 - 50, together with Cepeda himself, invited, counseled, encouraged and induced the Catholic community of Guam, including parents or guardians of children, and particularly parents or guardians of children attending Santa Barbara, to have trust and confidence in the Agana Archdiocese and its priests and to entrust their children to the company of priests and specifically to Cepeda, including allowing their children to be alone with Cepeda without supervision. Through such actions, Defendants collectively created and entered into a fiduciary and / or confidential relationship with its parishioners, including Catholic parents or guardians and their children, and

in particular, children who attended Santa Barbara. Accordingly, Defendants collectively created and entered into a fiduciary and / or confidential relationship specifically with the minor child Jive.

57. Through such fiduciary and / or confidential relationship, Defendants collectively caused parents or guardians to entrust their children to priests, and specifically to Cepeda, including the parents of Jive, which resulted in Jive attending Santa Barbara, which resulted in Jive being subjected to the acts of sexual abuse described herein.

58. Defendants collectively breached their fiduciary and / or confidential relationship with the minor child Jive by violating the trust and confidence placed in them by parishioners and specifically by the minor child Jive, and his parents, and by engaging in the wrongful acts described in this Complaint.

59. As a direct and proximate result of the Defendants' above – described conduct, Jive has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and have incurred and / or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

60. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling Jive to exemplary and punitive damages.

## X.
## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Jive Lee Kaai requests judgment against all Defendants on all counts as follows:

1. For all general, special, exemplary and punitive damages, as allowed by law in a sum to be proven at trial and in an amount not less than $5,000,000;
2. For costs and fees incurred herein;
3. Attorneys' fees, as permitted by law; and
4. For other such and further relief as the Court may deem just and proper.

# XI.
# DEMAND FOR JURY TRIAL

Plaintiff Jive Lee Kaai, through his counsel, David J. Lujan, hereby demands a jury trial of six (6) in the above-entitled action, pursuant to Fed. R. Civ. Proc. 48(a).

Respectfully submitted this 22nd day of March, 2017.

_____
DAVID J. LUJAN,
*Attorney for Plaintiff,*
*Jive Lee Kaai*

## VERIFICATION

JIVE LEE KAAI, declares and states that he is the PLAINTIFF in the foregoing COMPLAINT; that he has read said VERIFIED COMPLAINT FOR DAMAGES and knows the contents thereof to be true and correct, except as to the matters which may have been stated upon his information and belief; and as to those matters, he believes them to be true.

     I declare, under penalty of perjury, this 22nd day of March, 2017, that the foregoing is true and correct to the best of my knowledge.

_____
JIVE LEE KAAI